Per 'Curiam:
This is a suit for the recovery of income taxes deducted for the years 1951 through 1954 from the salaries of plaintiffs, husband and wife, who are citizens of the United States and were employed by various agencies of the United States Government while residing in the Ke-public of Panama in 1951 and 1952 and the Canal Zone in 1953 and 1954. The question involved is whether Section 251 (j) of the Internal Pevenue Code of 1939, 26 U.S.C. § 251 (1952 Ed.), and the comparable Section 931 (i) of the Internal Eevenue Code of 1954, 26 U.S.C. § 931 (1958 Ed.), contravene the due process clause of the Fifth Amendment to the Constitution, because they deny employees of the United States or its agencies an exemption from Federal income taxes when employed in possessions of the United States, by providing that income of Federal employees shall “be deemed to be derived from sources within the United States.” Plaintiffs were employed by agencies of the United States located in an area within the legislative power of the United States. Therefore, the income was “derived from sources within the United States” and we hold it within the *660 taxing power of the Congress. Plaintiffs are therefore not entitled to recover and their petition, as amended, will be dismissed.
It is so ordered.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiffs are husband and wife, citizens of the United States. During the years 1953 and 1954, they were residents of the Canal Zone. During the years 1951 and 1952, they did not reside in the Canal Zone but resided in the Republic of Panama.
2. Plaintiffs filed joint Federal income tax returns (Form 1040) for each of the taxable years 1951 to 1954 inclusive.
3. The following schedule shows their tax liability per return, payments made by withholding or otherwise, and refunds heretofore allowed for each of the taxable years 1951 to 1954 inclusive:

4.Plaintiffs filed claims for refunds (Form 843) for each of the taxable years 1951 to 1954 inclusive, on the dates and for the amounts as follows:

5.In their claims for refund, plaintiffs alleged that Section 251 (j) of the Internal Revenue Code of 1939 (or Section *661 931 (j) of the 1954 Code) violates the Fifth Amendment of the Constitution and is beyond the taxing power of the Congress for the following reasons stated in the claims:
a. Taxations without representation — U.S. citizens working in the Canal Zone have no right of representation in Congress;
b. Discriminatory — because other U.S. citizens living and employed in the Canal Zone are not taxed and U.S. citizens employed by the U.S. Government in other Territories and Possessions receive tax free cost-of-living differential while U.S. employees working for the Panama Canal Company and Canal Zone Government in the Zone are taxed on their differential, such classification and treatment is arbitrary;
c. Non-vmiformity of "benefits — The Canal Zone receives no grant in aid benefits such as are extended to the States, Territories and Possessions;
d. Presumption contrary to fact. — Sec. 220 of the Revenue Act of 1950 states a presumption contrary to fact. Since July 1, 1951, employees of the Panama Canal Company and Canal Zone Government have been paid by the Panama Canal Company from funds collected in the Canal Zone. A presumption cannot be made a basis for taxation. It is obvious that Panama Canal Company/Canal Zone Government employees are paid from a source without the United States and a legislative fiat to the contrary is not valid. This statement applies only to employees of the Panama Canal Company and Canal Zone Government and not to such of the claimants who are paid by direct appropriation;
e. The Federal Government has no power to tax citizens beyond its borders for income received and expended there. — Violation of Treaty Obligations — Sec. 214 of the Revenue Act of 1950 provides that no amendment made by the Act of 1950 shall apply in any case where its application would be contrary to any Treaty Obligation of the United States. This tax is contrary to the policy of the Treaty between the United States and the Republic of Panama, July 27,1939.
6. None of the claims for refund has ever been formally disallowed by registered mail by either the Secretary of the Treasury or his delegate. More than six months elapsed between the filing of each of the claims and the petition herein.
7. Plaintiffs, during the taxable years 1951 to 1954 inclusive, received income upon which they paid Federal income *662 tax, from the following employers in the locations and amounts shown:

8. The record contains no evidence that income earned by plaintiffs either from the U.S. Navy or the U.S. Army was derived from sources outside the United States.
9. The Panama Canal Company, a corporate agency of the United States, established by Public Law 841, 81st Congress, operates the Canal and its related business-type activities The stock in the company is held by the Secretary of the Army. The company operates the ship repair facilities, the docks, the steamship terminal facilities, the warehouses, the commissaries (retail stores), and the electric power system.
The Canal Zone Government, a separate entity, is charged with the functions of civil government, such as police and fire protection, schools, magistrate courts, and other similar activities.
The Governor of the Canal Zone is ex officio president of the Panama Canal Company. The company and the government are closely interrelated in purposes, organization, and operations, and the function of the two agencies in combination is the administration of the Panama Canal enterprise as a whole.
In addition to the Panama Canal Company and the Canal Zone Government, the headquarters of the Caribbean Command of the United States Army, of the 15th Naval District, and of the Caribbean Air Command, are located in the Canal Zone. To some extent, these military forces support the Canal Zone Government in that they may, under the direction of the Canal Zone Governor, be called out to provide military protection in case of riots and civil disorders. *663 There is also a United States District Court for the district of the Canal Zone. It is staffed in part by the Department of Justice and operates under the general supervision of the Administrative Office of the U.S. Courts.
10. The Canal Zone is an area approximately 10 miles wide, 5 miles on each side of the center line of the waterway, extending from deep water in the Atlantic Ocean to deep water in the Pacific Ocean, excepting the city of Panama on the Pacific side and Colon on the Atlantic side which are adjacent to the Canal Zone terminal communities of Balboa and Cristobal respectively.
11. The basic rights and obligations between the United States and the Republic of Panama are for the most part contained in the Convention of 1903 and the Treaties of 1936 and 1955.
The Convention of 1903, by preamble, acknowledges sovereignty vested in Panama which then in turn grants to the United States in perpetuity and as if it were sovereign, the use, occupation and control of the Canal Zone in return for an outright payment of $10,000,000, plus an annual payment, during the life of the Convention, of $250,000.
The Treaty of 1936 modified and revoked certain rights held by the United States under the 1903 Convention, and placed a number of restrictions on the rights of the United States within the Canal Zone. Certain provisions considered as out of order to the status of a sovereign nation were abrogated and the United States agreed to limit residence and the sale of goods and services in the Zone to persons directly related to the canal enterprise and not permit the establishment of new private businesses other than those having a direct relation to the operation and maintenance of the Canal. The annual payments were increased to $430,000.
The Treaty of 1955 placed further restrictions on the United States and increased the annual payments to $1,930,000.
12. Within the Canal Zone certain private industries having a direct relationship to the operation of the waterway, such as commercial banks, steamship agencies and oil com *664 panies, conduct operations, and some of their employees live within the Zone.
13. Both the Panama Canal Company and the Canal Zone Government account for their funds on fiscal years ended June 30.
14. The Canal Company receives revenues from tolls for ships transiting the Canal, services to shipping, services and sales to employees and others, and for some services rendered to the Republic of Panama.
15. The Canal Company is required to prescribe tolls at a rate calculated to cover, under a statutory formula and as nearly as practicable, the cost of maintaining and operating the Panama Canal, together with facilities and appurtenances related thereto, including interest, depreciation, the net cost of the operation of the Canal Zone Government, and, during the years 1951 and 1954 inclusive, the total annual payment to the Republic of Panama.
16. Since 1952 the Congress has made no appropriations for the operation of the Panama Canal Company but has approved the company’s budgets. However, the company does have recourse to appropriations if needed. The Congress appropriates operating and capital funds for the Canal Zone Government, which are placed in an account with the Treasury of the United States and segregated from the funds of the Panama Canal Company. Any funds appropriated and used by the Canal Zone Government must be reimbursed at the end of the fiscal year by the Panama Canal Company. The end result is that the Treasury of the United States pays no part of the cost of the operation of the Canal Zone Government. Appropriated funds are not used for the payment of payrolls or other expenses of the Panama Canal Company, except to the extent that the company is reimbursed for services which it performs for the Canal Zone Government.
17. The statutory formula, referred to above, does not require the Panama Canal Company to reimburse the United States for the cost of maintaining the military units at the Canal Zone nor for the expenses incurred in connection with the use of such military units during riots or civil disorders at the request of the Governor of the Panama Canal Zone.
*665 18. The revenues earned by the Panama Canal Company for sales and services performed in the Zone are physically collected there and deposited in one of two commercial bants located in the Zone. Deposits in the commercial bants in excess of the normal worting needs of the company are transferred to its account in the United States Treasury. When necessary to do so, the company can also draw money from its account in the Treasury.
19. The Panama Canal Company pays its employees who wort in the Canal Zone with chects drawn on its payroll account with a Canal Zone bant. If the payroll account does not contain sufficient funds to meet payroll needs, funds are transferred to it from the company’s account with the Treasury.
20. Computed in accordance with the statutory formula referred to in finding 15, the net income of the Panama Canal Company for the fiscal years ended June 30, 1952 to June 30,1955 inclusive, was as follows:
V ear Amount
1952-$2,369,030
1953- 7,200,963
1954- 4,160,010
1955- 681,134
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are not entitled to recover, and the petition, as amended, is therefore dismissed.